314 So.2d 483 (1975)
VANGRAFF, INC.
v.
Madge S. McCEARLEY.
No. 10224.
Court of Appeal of Louisiana, First Circuit.
May 19, 1975.
Rehearing Denied June 30, 1975.
Writ Refused September 17, 1975.
Writ Refused September 26, 1975.
Neil H. Mixon, Jr., Baton Rouge, for appellant.
Anthony J. Graphia, Baton Rouge, for appellee.
Before LOTTINGER, COVINGTON and BAILES, JJ.
LOTTINGER Judge.
This is a suit by petitioner, Vangraff, Inc., the owner of certain lots in Ashley Subdivision seeking to enjoin the defendant, Madge S. McCearley, from violating certain restrictive covenants running against property situated in the said subdivision.
*484 The Lower Court granted a judgment in favor of petitioner and against defendant, and the defendant has taken this appeal. The plaintiff has answered the appeal.
The record discloses that the petitioner is the owner of some sixteen lots in Ashley Subdivision as well as the duplex residential buildings on each of the said lots. Petitioner alleges that defendant is in the business of selling, renting and maintaining buildings (duplexes), located in Ashley Subdivision, including advertising, supervising and authorizing maintenance, exhibiting properties to prospective purchasers and renters, collecting rent, remitting to clients and maintaining a "model home" at 1264 Marque Ann Drive, designated by a sign placed in front thereof. Petitioner contends that said activities on the part of defendant are contrary to the restrictive covenants running against the subdivision, particularly, the restriction as follows:
"All of the lots contained in this subdivision are hereby designated as residential lots, and restricted to residential uses only. No part of the property located in this subdivision shall ever be used for commercial purposes or home occupations such as beauty shops, doctor's offices, dress shops, etc., however, this restriction shall not preclude duplex units or apartment houses which are expressly permitted."
The petitioner seeks to enjoin the defendant from engaging in the above mentioned activities on the property situated within the subdivision.
Following trial below the Lower Court rendered a judgment in favor of petitioner and against defendant enjoining the defendant from engaging in the following activities on a frequent and continuing basis on Lot 166 of said Ashley Subdivision:
"a. selling and renting real estate on behalf of other people for a commission;
b. renting and selling property that belongs to other persons;
c. receiving and accepting cash rental payments from tenants and sending such payments to owner;
d. maintaining rental units for others for compensation;
e. advertising a telephone number at the aforesaid residence and soliciting business and utilizing a telephone as a primary means of conducting business;
f. showing units and taking applications for rental;
g. executing lease agreements with tenants for others for compensation."
The defendant has taken a suspensive appeal maintaining that the Lower Court erred in finding that the activities of the defendant constituted a use of the incumbered lot for "commercial purposes" and that said holding deprived defendant of her right as guaranteed by the fourteenth amendment of the United States Constitution, Article I, Section 2 of the Louisiana Constitution of 1921 and Article I, Section 2 of the Louisiana Constitution of 1974.
The plaintiff, answered the appeal contending that the trial court did not go far enough when it restricted the defendant's activities to a "continuous" basis, rather than enjoining every single and enumerated act which they contend violates the subdivision restrictions.
The fourteenth amendment of the United States Constitution states as follows:
"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."
*485 The Louisiana Constitution of 1921, Article I, Section 2, provided in part as follows:
". . . no person shall be deprived of life, liberty or property, except by due process of law."
The Louisiana Constitution of 1974, Article I, Section 2, provides:
"No person shall be deprived of life, liberty or property, except by due process of law."
Of course the above restrictions refer to state action as opposed to private or personal action.
In Queensborough Land Company v. Cazeaux, 136 La. 724, 67 So. 641 the Supreme Court of this State was faced with an interpretation of the fourteenth amendment to the United States Constitution which prohibits discrimination against the Negro race. In that case the court held that the fourteenth amendment, insofar as prohibiting discrimination against the Negro race, applies only to State legislation, not to the contracts of individuals. Of course, the Supreme Court of the United States has since changed its interpretation so as to prohibit discrimination, however, the courts of this State have consistently upheld covenants running with the land similar to the one with which we are here confronted.
In Ouachita Home-Site and Realty Company v. Collie, 189 La. 521, 179 So. 841, the court in passing upon restrictions limiting said subdivision to the construction of nothing other than residences said:
"In the Queensborough Case, it was expressly held that such restrictions in contracts between individuals are not unlawful in this state; that they are not personal to the vendor, but inure to the benefit of all the other grantees under a general plan of development, are covenants running with the land, and create real, as distinct from personal, obligations. This holding was approved and reaffirmed in the Hill Case. In both cases it was further held that a writ of injunction was the proper remedy to enforce the restrictions."
Article 646 of the Louisiana Civil Code provides, in part, as follows:
"Real servitudes, which are also called predial or landed servitudes, are those which the owner of an estate enjoys on a neighboring estate for the benefit of his own estate."
In Gremillion v. Rapides Parish School Board, 242 La. 967, 140 So.2d 377, the court, in considering a restrictive covenant limiting the use of real estate to residential purposes, said:
"It is firmly established in our jurisprudence that, as a general rule, a restriction such as the one involved here is a covenant running with the land; that it is a real right; and that it is susceptible of judicial enforcement as a sort of servitude permitted under the articles of our Civil Code."
That the interpretation of such servitudes or restrictive covenants is to be in favor of the owner of the property to be affected is set forth in Louisiana Civil Code Article 753 which provides:
"Servitudes which tend to affect the free use of property, in case of doubt as to their extent or the manner of using them, are always interpretated in favor of the owner of the property to be affected."
In McGuffy v. Weil, 240 La. 758, 125 So.2d 154, the court was faced with the interpretation of a restrictive covenant which limited the use of the property to residential purposes and required that all dwellings erected must face Stubbs Place. The court, in enforcing the validity of the restrictions said:
"The law favors the free and unrestrained use of immovable property. It *486 follows that any doubt as to the interpretation of a servitude encumbering property must be resolved in favor of the property owner. LSA-Civil Code, Article 753. The intention of the proprietor to establish a servitude must clearly appear from the title document. Noel Estate v. Kansas City Southern & Gulf Ry. Co., 187 La. 717, 175 So. 468; Clark v. Reed [122 So.2d 344], supra. The contract, under consideration, explicitly declares that the restriction `shall constitute a covenant running with the land and shall be binding upon * * * all subsequent owners * * *.' The recitals of the contract leave no doubt that a real obligation was created."
We feel that, in truth and in fact, the defendant herein was conducting a real estate business on the restricted property. The restrictions clearly provide that the property is to be used for residential purposes only and that no commercial purposes or home occupations, such as beauty shops, doctor's offices, dress shops, etc., shall ever be conducted on the property. The restrictions, however, do permit duplex units or apartment houses.
The petitioner contends that the Lower Court was wrong in enjoining the defendant from engaging in the enumerated activities on a "continuing" basis. We do not agree with the petitioner in this respect as there are possibly some occasional acts on the part of the defendant which would not be contrary to the provisions of the restrictive covenants. While the restrictions prohibit the conduct of a doctor's office on the premises, it might very well be that a doctor, who maintained his offices elsewhere, could conceivably have a patient appear at his home to pay a past due bill. Would this be considered contrary to the restrictions? We do not feel so. Similarly, it is conceivable that a tenant of one of the duplex units might occasionally come to the defendant's home to pay his rent in cash. This, we feel, would not be contrary to the restrictions, provided, it is on an occasional basis and is not done as a matter of policy.
For the reasons hereinabove, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by petitioner.
Affirmed.